UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Crim. No. 5:16-CR-94-2 |
| DONALD MCFARLAN,<br>　　　Defendant. | |

**<u>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SEVER</u>**

The United States of America, by and through its attorney, Eugenia A.P. Cowles, Acting United States Attorney for the District of Vermont, hereby submits this opposition to defendant Donald McFarlan's motion to sever. For the reasons that follow, the defendant's motion should be denied.

Defendant McFarlan has moved to sever his case from co-defendants Brian Folks and Mandy Latulippe pursuant to Federal Rules of Criminal Procedure 8 and 14, the rules regulating joinder and severance. McFarlan's arguments fail to articulate improper joinder or an adequate basis for severance and should therefore be denied. Indeed, (1) joinder is proper under Rule 8, in that all of the charged counts are connected with and constitute parts of a common scheme or plan, and the defendants are alleged to have participated in the same series of acts or transactions; and (2) the defendant has not shown that a failure to sever would cause compelling prejudice to him under Rule 14.

The evidence of the narcotics distribution business led by Brian Folks, Donald McFarlan, Mandy Latulippe, and others, is inextricably woven into the evidence of the human trafficking business, as the drug conspiracy supplied the necessary fuel (drugs) to power the human

1

trafficking business. In addition, there is a great degree of overlap in witnesses, as each of the human trafficking victims referred to in the indictment played some role in the narcotics conspiracy, either as a runner, a bagger, or a customer, and the inverse is also true. Finally, evidence of sex trafficking is relevant to show McFarlan's – and others' – participation in the drug conspiracy, as well as his intent and knowledge of possession and distribution of controlled substances. Conversely, evidence of the drug conspiracy is relevant to demonstrate the essential elements of how co-defendant Folks enticed and coerced the sex trafficking victims.

If the Court grants this motion, there would be (at a minimum) two separate trials, rather than a single trial against one to three persons jointly engaged in related and periodically interwoven criminal schemes to distribute illegal narcotics and to exploit young women in commercial sex. The defendant has not offered any justification for such an inefficient and unnecessary expenditure of resources or any reason to force witnesses and trauma victims to relive publicly this period of their lives more than one time.

## I. BACKGROUND AND THEORY OF THE GOVERNMENT'S CASE

Defendants Brian Folks, Donald McFarlan, and Mandy Latulippe are charged in the Second Superseding Indictment with a conspiracy to distribute heroin, cocaine base, and cocaine from May 2015 to March 2016 in Count One. Folks and Latulippe are charged in substantive distribution counts in furtherance of the narcotics conspiracy in Counts Two, Four, Six, and Seven. McFarlan is charged in a substantive distribution count in furtherance of the narcotics conspiracy in Count Three and in a substantive possession with intent to distribute count in furtherance of the narcotics conspiracy in Count Five.

Folks is also charged in the Second Superseding Indictment with sex trafficking by force, fraud, or coercion in Counts Eight – Thirteen; of these, Counts Ten, Eleven, and Twelve fall within the timeframe charged in the narcotics conspiracy, and Counts Eight, Nine, and Thirteen pre-date but are logically related to the narcotics conspiracy as charged. Counts Eight through Thirteen – the human trafficking counts – require as essential elements proof of force, fraud, or coercion.

The government's investigation began in 2015, when law enforcement began receiving information from various sources that heroin was being distributed from 73 Spring Street and other locations in and around Burlington. Law enforcement identified Brian Folks as the leader of the drug conspiracy. Three other men played key roles in the drug conspiracy as managers, "runners," and/or "couriers": "G" or "Ghost" (Donald McFarlan), "Hightower," and "Shay" helped transport drugs up from New York to Vermont, managed bagging and sales to local customers, conducted hand-to-hand narcotics sales to customers, and provided "security" for the narcotics operation. Witnesses also reported that a number of women worked for the narcotics conspiracy as "baggers" and "runners," including Mandy Latulippe. Many of the women who worked for the drug conspiracy were addicts or other vulnerable people who had suffered loneliness, poverty, and inadequate family support. Folks was able to lure the most desperate among them with the promise of love, drugs, and shelter and thereafter exploit them for commercial sex.

The government's theory of the case is that from at least June 2012 through February 2016, overlapping with the dates charged for the drug conspiracy, co-defendant Folks used the drug business to support and develop a side business: human trafficking. Folks enticed multiple

female victims with the promise of drugs, increased their habits from recreational to debilitating, and coerced them to engage in commercial sex in violation of federal law, in part by withholding – or threatening to withhold – heroin and crack cocaine until a commercial sex act was performed. *See United States v. Fields*, 2013 WL 5278499 (M.D. Fla. 2013) (unreported) (concluding that the fear of severe opiate withdrawal symptoms meets the definition of physical and psychological "serious harm" as used in human trafficking statute defining "coercion"), *aff'd*, *United States v. Fields*, 625 Fed. Appx. 949 (11th Cir. 2015). *See also United States v. Paris*, 2007 WL 3124724 (D. Conn. 2007) (unreported) (finding the withholding of heroin a basis from which a reasonable jury could conclude the defendant used coercion to cause a victim to engage in a commercial sex act). By conspiring with McFarlan and others to traffic large quantities of heroin and crack from New York to Vermont, Folks was able to coerce victims into commercial sex by manipulating their addiction and their fear of withdrawal sickness. Indeed, the trafficked girls were recruited because of drug addiction and other vulnerabilities, "paid" in heroin and crack for some of the commercial sex work they were coerced to perform, anesthetized through the use of narcotics to get through the ordeal, and punished and controlled from refusing commercial sex by the threat of involuntary withdrawal from heroin and crack.

Therefore, the drug and commercial sex trafficking charges are not mutually exclusive. To the contrary, the co-defendants' distribution and/or withholding of controlled substances to and from the victims of the commercial sex trafficking forms the basis of the "coercion" element of those charges. "Coercion is defined by statute to include "threats of serious harm to or physical restraint against any person" and "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical

restraint against any person." 18 U.S.C. § 1591(e)(2). "'Serious harm' means any harm, whether physical or nonphysical, … that is sufficiently serious … to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." 18 U.S.C. § 1591(e)(4).

Addicted to heroin and crack, the victims experienced – and came to fear – the physical and psychological harm of withdrawal sickness when they did not have sufficient access to drugs. The physical harm alone included fevers, chills, vomiting, diarrhea, incontinence, and other types of intense physical discomfort. Folks used the victims' fear of withdrawal sickness to coerce them into commercial sex work when they did not want to prostitute. Folks leveraged the drug distribution business he ran with McFarlan and Latulippe to create and support his sex trafficking business and vice versa, as the sex trafficking victims were fed the very drugs that the drug conspiracy peddled, and the victims were compelled to sexually service and entertain the male employees of the drug business. Over time, all or nearly all of the proceeds from the commercial sex found their way back into the pockets of the drug dealers.

## II. ARGUMENT

A. Rule 8

"There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996). "This preference is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); *see also United States v. Cardascia*, 951 F.2d 474,

482 (2d Cir. 1991); *United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988). Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro*, 506 U.S. at 537 (*quoting Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). "Each of [the] tests for when offenses may be tried together reflects a policy determination that gains in trial efficiency outweigh the recognized prejudice that accrues to the accused." *Turoff*, 853 F.2d at 1042.

Federal Rule of Criminal Procedure 8(b) permits the government to join defendants in a single indictment if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Additionally, "[t]he defendants may be charged in one or more counts together or separately," and "[a]ll defendants need not be charged in each count." Fed. R. Crim. P. 8(b). Under Rule 8(b)'s "same series of acts or transactions" language, "joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (quotations and citations omitted).

Rule 8(b) also encompasses the joinder of separate, but related, conspiracies. For example, in *Rittweger*, the Second Circuit upheld the joinder of two separate, but related, conspiracies to defraud investors. *Id.* While some defendants in that case were alleged to have participated in both conspiracies, the defendants claiming misjoinder were alleged to have participated in only the first or only the second conspiracy. *Id.* Nonetheless, joinder of all defendants was proper because the conspiracies "evince[d] a common plan or scheme and there [wa]s a substantial identity of facts or participants." *Id.* (*citing United States v. Attanasio*, 870

6

F.2d 809, 815 (2d Cir. 1989) (quotations omitted)). In short, *Rittweger* holds that so long as the requirements of Rule 8(b) are satisfied, "members of two or more conspiracies may be joined as defendants even where the members have not been charged as participating in one overarching conspiracy." *Id.* at 178.

Moving under Rule 8(b), "Joinder of Defendants," McFarlan appears to challenge the joinder of the narcotics trafficking counts that he is named in from the drug and human trafficking counts involving the co-defendants. Because McFarlan is named in Counts One, Three, and Five, McFarlan appears to propose that this Court sever McFarlan from the Second Superseding Indictment, leaving the government to try one case against McFarlan on conspiracy and two substantive narcotics counts and another case against Folks and Latulippe on *the same drug conspiracy*, plus other substantive drug counts and the human trafficking counts. The Supreme Court, in language echoed by the Second Circuit, has determined that:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.

*Salameh*, 152 F.3d at 115 (quoting *Richardson,* 481 U.S. at 210). The Court should reject this proposition as an inefficient and unnecessary expenditure of resources, as well as an unjust outcome for the witnesses, and rule that all three of the defendants are properly joined under Rule 8(b) as logically connected.

McFarlan incorrectly alleges that "the sex trafficking crimes and the facts regarding these crimes do not, in any way, connect with or link to the drug conspiracy." In fact, the evidence of the human trafficking is inextricably intertwined with the evidence of the narcotics distribution

business, as the government's theory is that Folks' drug dealing enabled him to coerce young women into performing commercial sex acts. *See United States v. Williams*, 2017 WL 744583, *2 (E.D.Wis. 2017) (denying severance of human trafficking charges from narcotics trafficking charges as part of a common scheme or plan). Stated otherwise, the actual product distributed by the drug conspiracy literally fueled the human trafficking activity, as Folks demeaned, demoralized, and dominated his victims through the coercive use and restriction of the heroin and crack cocaine he and his co-conspirators peddled. In essence, Folks was a drug dealer, and McFarlan and Latulippe worked for him, distributing heroin and crack to local addicts. In his capacity as head drug dealer, Folks was able to recruit and coerce local girls suffering from addiction and other socio-economic issues into performing acts of commercial sex for his financial gain. Folks used the promise of drugs he, McFarlan, and Latulippe sold to entice and exploit the victims and thereafter controlled the victims by withholding drugs until commercial sex acts were performed.

Proof of the drug crimes is therefore proof of identity and criminal intent as to Folks in the human trafficking crimes, and proof of the human trafficking crimes provides proof of identity, motive, knowledge, and intent of Folks, McFarlan, and Latulippe in the drug conspiracy. Moreover, proof of the drug crimes is proof of absence of mistake and defeats an innocent explanation in the human trafficking crimes. In short, the drug distribution evidence explains *how* Folks was able to commit the human trafficking offenses.

Additionally, every single victim of the human trafficking crimes is also a witness to and will provide evidence of the drug conspiracy. Indeed, a substantial amount of the same evidence would be elicited to support both types of crimes, including the various co-defendants'

drug distribution activities, the relationships between and among the co-conspirators and their customers, testimony regarding the (same) locations from which both the drugs and the girls were sold, and the circumstances surrounding the drug-fueled coercion that partially enabled the human trafficking. Moreover, evidence of the various schemes was found during search warrants of the same locations and devices.

Overall, the Second Superseding Indictment charges a series of acts or transactions involving two crimes/conspiracies: one to distribute drugs, and the other to commit human rights violations fueled by the drugs that were sold by members of the conspiracy. Therefore, there is a more than adequate "substantial identity of facts or participants" to support proper joinder under Rule 8. *See Rittweger*, 524 F.3d at 177; *Attanasio*, 870 F.2d at 815. The joinder of co-defendants in this case falls squarely within *Rittweger*'s holding that the "members of two or more conspiracies may be joined as defendants even where the members have not been charged as participating in one overarching conspiracy." 524 F.3d at 178. Here, the two related series of acts and transactions charged in the indictment constitute a logically connected scheme to distribute controlled substances and to use those controlled substances to exploit young women for commercial sex. Just as in *Rittweger*, McFarlan is properly joined in the Second Superseding Indictment, as it charges overlapping crimes that are part of the same series of acts or transactions, notwithstanding that McFarlan is not charged in both types of crimes. In short, all of the counts and co-defendants are properly joined under Rule 8.

 B. Rule 14

McFarlan also moves to sever himself from the case against co-defendants Folks and Latulippe under Federal Rule of Criminal Procedure 14(a). Rule 14(a) provides, in relevant

9

part, that "[i]f the joinder of offenses or defendants in an indictment … appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "Given the balance struck by Rule 8, which 'authorizes some prejudice' against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in 'substantial prejudice.'" *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (*quoting Turoff*, 853 F.2d at 1043); *see also United States v. Rucker*, 586 F.2d 899, 902 (2d Cir. 1978) ("The burden is upon a moving defendant to show facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial."). In essence, "[a] defendant seeking severance must show that the prejudice to him from a joint trial is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials. *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). "Absent such a showing, the defendant's request for a separate trial must give way to the public interest in avoiding unnecessary duplicative efforts, trial time, and expense." *United States v. Potamitis*, 564 F. Supp. 1484, 1486 (S.D.N.Y. 1983) (Weinfeld, J.), *affirmed*, 739 F.2d 784, 790 (2d Cir. 1984). McFarlan has not met this high burden here, and many of his arguments are premature and more appropriately raised in a motion *in limine,* once we have a better sense of which defendants, if any, are headed to trial.

     McFarlan cites four reasons in support of severance; all are unavailing. First, McFarlan references potential *Bruton* problems that could arise at trial. These claims are premature. *Bruton* concerns arise when a co-defendant's extrajudicial statements incriminate a defendant, and those statements are then "deliberately spread before the jury in a joint trial." *Bruton v.*

*United States*, 391 U.S. 123, 136 (1968). But these trial-related problems do not yet exist. Indeed, guilty pleas by one or both of McFarlan's co-defendants may obviate further *Bruton* concerns. Additionally, the government has not yet decided what post-arrest statements, if any, it will offer at trial, and any such statements could be redacted as necessary and/or accompanied by a limiting instruction that the statements would be admitted against that defendant alone. *See United States v. Taylor*, 745 F.3d 15, 28 (2d Cir. 2014). Until trial, these concerns are merely "potential" problems and, as such, do not serve as a basis for severance at this time.

Second, McFarlan posits the risk of "prejudicial spillover" from the human trafficking counts, should the Court not sever McFarlan from co-defendant Folks. McFarlan's concerns (should they arise at the time of trial) could be alleviated through adequate precautions, such as a robust jury selection process and subsequent limiting instructions. *See United States v. Page*, 657 F.3d 126, 130-31 (2d Cir. 2011). At trials with joint defendants, courts can instruct the jury to consider separately the evidence for each. *See United States v. Feyrer*, 333 F.3d 110, 115 (2d Cir. 2003) (affirming denial of severance motion by one of several defendants where court "provided the jury . . . a charge . . . specifying that separate consideration was to be given to each count against each defendant"); *United States v. Melendez*, 301 F.3d 27, 36 (1st Cir. 2002) (joinder of offenses non-prejudicial because jury instructed to consider each charge separately); *United States v. Nelson*, 137 F.3d 1094, 1108 (9th Cir. 1998) (same).

Severance is not appropriate merely because one defendant is charged with violent crimes and a co-conspirator is not. *See, e.g.*, *United States v. Minaya*, 395 F. Supp. 2d 28, 40 (S.D.N.Y. 2005) (denying severance where two drug conspiracy defendants not charged with violent acts were tried jointly with co-conspirators charged with assault and homicide). Indeed,

as the *Minaya* court noted, "'even if the Court were to grant severance, much of the evidence regarding ... codefendants' acts of violence would be admissible in ... [their] trial as proof of the existence and nature of the narcotics conspiracy.'" *Id*. (*quoting United States v. Santiago,* 174 F. Supp. 2d 16, 23 (S.D.N.Y. 2001); *United States v. Muyet,* 945 F. Supp. 586, 596 (S.D.N.Y. 1996)); *see also United States v. Thai,* 29 F.3d 785, 812 (2d Cir. 1994) ("When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself.") (citations omitted). This is particularly true in the instant case, where the human trafficking victims were themselves witnesses to the drug conspiracy as customers and/or low-level workers.

No doubt some people have an emotional reaction to hearing a witness recount episodes of sexual trauma or other violence. Yet the same risk is inherent in hearing testimony regarding drug trafficking, perhaps now more than ever in our state. An overly emotional juror who would be tempted to convict McFarlan merely because he was associated with Folks is clearly not the right juror for this case; that risk may be dealt with in *voir dire*, as well as by cautionary instructions from the Court.

McFarlan also points to the volume of the evidence in the human trafficking counts and suggests that it will "overwhelm" the drug distribution evidence. Yet the Second Circuit has clearly stated that "disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant severance." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991); *see also United States v. Jimenez*, 824 F. Supp. 351 (S.D.N.Y. 1993) (denying severance for those with lesser roles in the conspiracy on the basis of evidence disparity). The government disagrees that the evidence as to each kind of crime

charged here can be differentiated on this basis, as there is a truly significant amount of evidence as to both kinds of crimes, and the timeframes charged in the indictment do not in any way reflect the quantity of the evidence as to individual counts. But even if it were true that the human trafficking case was somehow "bigger" by virtue of its being "longer" as charged in the indictment, it would seem that – if anything – the evidence of the drug conspiracy would pale in comparison and therefore open the door to a failure of proof defense. At any rate, concerns regarding quantity versus quality of evidence are regularly part of a court's jury instruction, and this is a logical extension of that basic tenet. McFarlan has not offered any concrete risk of prejudicial spillover from either the inherent nature or the quantity of the evidence that would overcome the preference for joint trials and judicial economy realized by a single presentation of interconnected evidence.

Third, McFarlan suggests that his right to a speedy trial is compromised by joinder, as the case has been delayed by the substitution of counsel for Folks and discovery on new counts in superseding indictments since McFarlan's initial pretrial detention, twelve months ago. As an initial matter, there has been no compromise of the defendant's rights under the Speedy Trial Act, which provides detailed time limits within which the government must bring a case to trial, or under the Sixth Amendment. Indeed, the Speedy Trial Act provides for this very eventuality and carves out an exception to the 70-day limit, excluding from calculation "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7); *see also United States v. Stone*, 2006 WL 436012, *6 (S.D.N.Y. 2006) (unreported) (*citing United States v. Gambino*, 784 F. Supp. 129, 138 (S.D.N.Y. 1992)). Moreover, the defendant has

13

consented to time exclusions from the Speedy Trial Act for purposes of discovery review and motion practice. Additionally, this argument must fail, as it would open the door to severance of nearly every multi-defendant, heavy-discovery case that was indicted piecemeal over the course of a lengthy investigation or that suffered from the substitution of counsel who needed time to catch up. Furthermore, McFarlan is charged with conspiracy and distribution of 28 grams or more of crack cocaine and 100 grams or more of heroin and therefore faces a mandatory minimum of five years in prison. Twelve months of pretrial detention cannot be said to be unreasonable under these circumstances.

Finally, McFarlan argues that there would be differences in the scope of the separate trials as between McFarlan and Folks, and somehow considerations of judicial economy therefore weigh in favor of severance. This rationale is hard to understand given that McFarlan and Folks are charged in one drug distribution conspiracy, and therefore the government would have to try the same case twice if severance were granted.

**III.  Conclusion.**

For the reasons explained above, the Court should deny the defendant's motion to sever.

Respectfully submitted, this 8th day of August, 2017.

        UNITED STATES OF AMERICA

        EUGENIA A.P. COWLES
        Acting United States Attorney

By:    /s/ *Abigail E. Averbach*
       Abigail E. Averbach
       Assistant U.S. Attorney

P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
abigail.e.averbach@usdoj.gov

<u>Certificate of Service</u>

      By filing the above document this day via the Court's electronic filing system, I certify that a copy will be served on Kevin Henry, Counsel for Defendant, via ECF.

Dated:        August 8, 2017
                 Burlington, Vermont

                                      By:     /s/ *Abigail E. Averbach*
                                                    Abigail E. Averbach
                                                    Assistant U.S. Attorney
                                                    P.O. Box 570
                                                    Burlington, VT 05402-0570
                                                    (802) 951-6725
                                                    abigail.e.averbach@usdoj.gov