UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

_____

UNITED STATES OF AMERICA          )

              VS                  )   CASE NO: 2:16-cr-94-2

DONALD McFARLAN                   )

_____)        MOTION HEARING


BEFORE:   HONORABLE GEOFFREY W. CRAWFORD
          CHIEF DISTRICT COURT JUDGE



APPEARANCES:   ABIGAIL E. AVERBACH, ESQUIRE
                    Assistant U.S. Attorney
                    P.O. Box 570
                    Burlington, Vermont  05402
                    Representing The Government



               KEVIN M. HENRY, ESQUIRE
                    Primmer Piper Eggleston & Cramer
                    P.O. Box 1489
                    Burlington, Vermont   05402
                    Representing The Defendant



DATE:          September 5, 2017



          TRANSCRIBED BY:  Anne Marie Henry, RPR
                    Official Court Stenographer
                         P.O. Box 1932
                    Brattleboro, Vermont   05302

```
 1              (The Court opened at 1:30 p.m.)

 2          THE CLERK:  Your Honor, the matter before the

 3   Court is criminal number 16-94-2, United States of America

 4   versus Donald McFarlan.  Present on behalf of the government

 5   is Assistant United States Attorney Abigail Averbach.  The

 6   defendant is present with his attorney Kevin Henry.  And we

 7   are here on a motion to sever defendants for trial.

 8          THE COURT:  All right.  Afternoon.  Nice to see

 9   all three of you.

10          MS. AVERBACH:  Good afternoon.

11          MR. HENRY:  Good afternoon.

12          THE COURT:  I've had a chance to read everybody's

13   papers, twice as it happens, but why don't I turn things

14   over to Mr. Henry and hear from you on your motion and then

15   give the government a chance to respond.

16          MR. HENRY:  Thank you, Your Honor.  Is it your

17   preference that I use the podium?

18          THE COURT:  Sure.

19          MR. HENRY:  Your Honor, I would like to start with

20   a discussion of severance under Rule 8(b) because I frankly

21   think that that's the strongest basis for severance in this

22   case.

23          And, you know, the government seems to be taking

24   the position, and I think almost solely, that the basis for

25   joining the human trafficking claims with the drug claims is
```

1   the theory that the human or the drug claims somehow fuel

2   the human trafficking claims.  As I understand it, that's

3   the essence of their position.

4          And there are several problems with that theory as

5   it relates to Rule 8(b).  You know, first and foremost, I

6   think as a factual matter the problem with that position is

7   that the human trafficking allegations are alleged to have

8   begun long before the drug distribution claim conspiracy is

9   alleged to have begun.

10          So just as a factual matter, I don't see how the

11   government can articulate the theory that something, human

12   trafficking that occurred in 2012 was fueled by drug

13   distribution that occurred in 2015.  But even if that were

14   true, and even accepting for sake of argument the notion

15   that these crimes can and do go hand in hand at times, under

16   Rule 8(b) that does not satisfy the government's

17   requirements because the indictment, and that is the, you

18   know, the document that we need to start from, because the

19   issue before the Court is whether these charges are properly

20   joined based on what's alleged in the indictment.  I mean,

21   the case law is fairly clear on that.

22          And the indictment doesn't allege any such

23   relationship between the human trafficking claims and the

24   drug distribution claims.  They, we simply have a conspiracy

25   to distribute narcotics and some individual counts and then,

1    then we have the human trafficking counts all by themselves

2    without any -- only against Mr. Folks and with no allegation

3    or no suggestion that they are somehow related.

4          So I think that's a problem that the government

5    has in this case, is that even if you were to believe or to

6    accept the theory that the, that the human trafficking was

7    fueled by the drugs, the government is bound by what is in

8    the indictment.  And there is no, there is no allegation of

9    a common scheme there.

10          And the third problem with that theory, as it

11   relates to -- as being the basis for joinder, is that even

12   if it were true that Mr. Folks used drugs and withholding

13   drugs as a method of coercion, it's not necessarily that

14   those go hand in hand.  I accept the case law that the

15   government cites for the proposition that, you know, feeding

16   an addiction and controlling supply is a method of coercion,

17   but it's not the only method of coercion under the human

18   trafficking statute.  So it's not, even if it were accepted

19   that that's what Mr. Folks did, it's not necessarily that

20   those go hand in hand.

21          And I would point the Court to the Rajaratnam

22   decision, which I think does a nice job of distinguishing

23   the primary case that the government relies on here, which

24   is the Rittweger decision.  And, you know, the key

25   distinction, as the Court in Rajaratnam points out, is that

there is no allegation in that case, there was no allegation
of the common scheme in the indictment.  Whereas, in the
Second Circuit case, the Rittweger case, there were two
schemes alleged in the indictment.  They were both schemes
to basically defraud investors.  And they were slightly
different schemes, but they were alleged to have the same
common purpose, which was to defraud investors out of their
money into companies related in both schemes.  So that
decision does a nice job of distinguishing the case.  And I
think for the very same reasons this case doesn't fit into
the Rittweger fact pattern.

          And the Court in Rajaratnam pointed out that, you
know, if joinder were to be allowed on the theory that the
government espouses here that, you know, the drugs fueled
the human trafficking, on the part of one defendant and one
defendant only, with no allegation that anybody else even
knew of the human trafficking, then any defendant would be
subject to being joined in a criminal case with another
defendant that, that had other allegations, unrelated
allegations pending against them.  And that's just not the
law.

          So under Rule 8(b) I think that the government is
bound by the allegations of the indictment that it brought
in this case.  And the allegations in the indictment do not
allege any sort of common scheme as between the drug

 1   distribution and the human trafficking.

 2          And, further, --

 3          THE COURT:  But let me push back on that a little.

 4   The indictment looks like most indictments, it's just a

 5   skeletal recitation of the elements of the offense with the

 6   names and dates and locations added in.  It doesn't say

 7   anything about motive or connection to other charges or, I

 8   mean, it's not a narrative.  It just puts you on notice of

 9   the grand jury's determination that there's probable cause

10   to proceed.

11          MR. HENRY:  Well, I would agree with that, Your

12   Honor, it does.  But the problem with that as it relates to

13   Rule 8(b) is that the Court must make a decision on joinder

14   --

15          MS. AVERBACH:  Right.

16          MR. HENRY:  -- based on the indictment.  And the

17   government certainly has a choice on how much information

18   they can put into an indictment.  And I think it was the

19   Rajaratnam Court that made the statement that, you know, if

20   the Court or if the government wants to proceed on a

21   barebones indictment that it does so at its own risk.

22          And I think that's exactly the case here.  If the

23   theory was that the human trafficking was fueled by the

24   drugs then that could have certainly been spelled in out in

25   the indictment, which it was not.  So I think that's the

1   strongest reason for severance in this case.  And I think

2   it's pretty clear on the facts and the law.

3         And the last point I would make about Rule 8(b)

4   is, you know, the government has likened this to comparing

5   two different conspiracies.  And I'm not sure that's

6   actually wrong to do that, but it's worth noting that the

7   human trafficking claims are not a conspiracy.  They are,

8   they are against Mr. Folks and Mr. Folks alone.

9         THE COURT:  Right.

10        MR. HENRY:  With no allegation in the indictment

11  that anybody else participated -- any of the other

12  co-defendants, certainly not Mr. McFarlan.

13        So, and the government also points out that, you

14  know, that some of the victims will be witnesses in the drug

15  conspiracy case and there's, there's some overlap in the

16  witnesses.  But my response to that is, first of all, again,

17  we need to start with the indictment and not what the

18  witnesses will testify to.  But the common overlap of

19  participants that Rule 8(b) contemplates I think pretty

20  clearly does not contemplate witnesses.  It contemplates

21  co-defendants, actors, wrongdoers.  So I don't think that

22  that's -- to the extent that there's any overlapping

23  witnesses between the two claims really has any bearing on

24  this analysis under Rule 8(b).

25        With respect to Rule 14, should the Court find

1   that the claims are properly joined, I think the strongest

2   argument for severance under Rule 14 is the spillover, which

3   is the second point we made and probably should have been

4   the first point because that is really the heart of why it

5   would be unfair to Mr. McFarlan to be joined in trial with

6   Mr. Folks on, with these counts still in place.

7         You know, there are plenty of cases in the Second

8   Circuit that acknowledge the fact that both in terms of the

9   volume of evidence and then the nature of the evidence, the

10  joinder can lead to unfair prejudice.

11        And here I think we would have both.  We would

12  have the jury sitting here for a long period of time

13  listening to some very horrific allegations and evidence of

14  human trafficking as against Mr. Folks only.  It would not

15  be admissible against Mr. McFarlan.

16        And not only would there, would I think that that

17  testimony probably would be great, you know, that evidence

18  would be greater in quantity than the drug conspiracy

19  evidence.  But it also has the effect of poisoning, in the

20  jury's mind, Mr. McFarlan.  To, if, you know, the jurors

21  being human as they are, to be -- to hear that evidence

22  against one co-defendant it would be very difficult, in my

23  view, if not impossible, for the jury to segregate in their

24  mind the fact that Mr. McFarlan has not been alleged to have

25  been involved in this at all.

1           And so I think that that's the strongest argument.

2   And there are plenty of cases that we cited in our papers

3   that acknowledge that, those factors as a basis to sever

4   under Rule 14.

5           And then with respect to the, to the efficiency

6   argument raised by the government, again, we acknowledge

7   that that, that that's an important consideration for the

8   Court under Rule 14.  But not so important, certainly, it's

9   not an issue under Rule 8(b).  I think 8(b) stands on its

10  own and the counts are either properly joined or they are

11  not without regard to whether it's more efficient to try the

12  case together.  But even under Rule 14 where efficiency

13  comes into play, efficiency has its limits.

14          And, of course, you know, the, it would be

15  improper for the government to try somebody for the sake of

16  efficiency to the point that it erodes a defendant's right

17  to a fair trial, which we think would happen here.

18          And, you know, if the government were forced to

19  try two cases, one against Mr. McFarlan and one against

20  Mr. Folks, I don't think that that's, you know, so

21  inefficient to cause the government any undue burden here.

22          The case against Mr. McFarlan is relatively

23  narrow.  He is charged in the conspiracy, but the individual

24  or the substantive counts against him relate to basically a

25  couple of weeks time; a controlled buy and a possession

1    count.

2         So I think Mr. McFarlan's involvement in the

3    conspiracy was, if the government can prove a conspiracy,

4    it's relatively short.  It's a much shorter case than the

5    case against Mr. Folks.  So I don't see much to be gained in

6    the sake of efficiency for trying these cases together,

7    especially when you consider the prejudice to Mr. McFarlan

8    trying the cases together.

9         THE COURT:  What does the picture look like if you

10   exclude from consideration the trafficking counts that

11   precede the drug distribution conspiracy and had it only

12   been brought with the counts against your client for

13   conspiracy and distribution and possession, and against a

14   co-conspirator adding in the counts of trafficking, but all

15   from the same timeframe, would you make the same arguments

16   or would your case be weaker?

17        MR. HENRY:  I would make primarily the same

18   arguments.  And the primary argument that I would rely on is

19   the fact that there is still no common scheme alleged.

20   There are two silos of charges without any allegation of

21   overlap between the two except for the government's theory

22   that they've articulated in their papers.

23        But, again, that's not the way Rule 8(b) works, as

24   I understand it.  I think the Court shouldn't consider what

25   the government will argue at trial.  It should look at the

1  superceding indictment or the second superceding indictment

2  in this case and look to see if there's any, any common

3  scheme alleged.

4          And there clearly isn't in this case.  And to the

5  extent that the common scheme is to, you know, is to

6  illegally obtain profits, you know, I think the same could

7  be said for any crime.  So it has to be more than that.

8          And so, it would, it would, it, you know, it would

9  change the argument a little bit, but at the end of the day

10  the principal argument stands the same.

11          THE COURT:  Okay.  We haven't talked about the

12  confrontation clause issue, which is one that worries me

13  probably more than the others.  But why don't I hear from

14  the government on that issue and then give you a chance to

15  respond.

16          MR. HENRY:  Okay.

17          THE COURT:  Because they know more really about

18  these statements than you and I do.

19          MR. HENRY:  Right.  Thank you.

20          THE COURT:  Okay.

21          MS. AVERBACH:  Thank you, Your Honor.  You just

22  want to hear me briefly on the Bruton issue or on

23  everything?

24          THE COURT:  On everything.  But I wanted to make

25  certain that I understand the confrontation clause.  That's

1    the one that will get it sent back.

2            MS. AVERBACH:  Let me start with that.  That's the

3    easiest.  I view it as unlikely that we would use Folks'

4    post-arrest statement as part of our evidence, although I

5    want to reserve the right to do it.  So I don't want to make

6    any final decisions as to the government's evidence now.

7            THE COURT:  Right.

8            MS. AVERBACH:  But I can tell you I think it's

9    unlikely.  It's largely not particularly helpful to our

10   case.

11           THE COURT:  It usually isn't.

12           MS. AVERBACH:  Pardon?

13           THE COURT:  It often isn't.

14           MS. AVERBACH:  Right.  To the degree that there

15   are helpful portions, and we view it as important to get

16   those in --

17           THE COURT:  Right.

18           MS. AVERBACH:  I do think that the statement could

19   be redacted to excise the portions where there are Bruton

20   issues because they are discreet parts of the statement.

21   And certainly the Court could issue limiting instructions.

22           THE COURT:  Those haven't been met with much

23   affection by the Supreme Court.

24           MS. AVERBACH:  You know, there's also the

25   possibility of having two juries impaneled.  I have, I think

1    that's such a --

2              THE COURT:  That one sounds like --

3              MS. AVERBACH:  -- gymnastic event.

4              THE COURT:  Yeah.  That would be a nightmare.

5    Right.

6              MS. AVERBACH:  You know, I do think that the issue

7    is premature, but I can tell you that there is very little

8    evidentiary value, from the government's perspective in

9    Folks' post-arrest statement.

10             I mean I, --

11             THE COURT:  All right.  It's not premature in one

12   sense that if one of several remedies for the Bruton problem

13   is severance, probably the most drastic.

14             MS. AVERBACH:  True.

15             THE COURT:  But that has to be made now.  That

16   isn't really available to me at trial.

17             MS. AVERBACH:  No.  But there will come a point

18   where we have, you know, zeroed in on the evidence that we

19   will use a month or two months ahead of whatever trial date

20   Your Honor sets.  And at that point we will have a very

21   clear view of the evidence.  We are using the evidence.  We

22   are not using -- or the evidence we are manipulating to use

23   in a way that accommodates the needs of every defendant at

24   the table.

25             THE COURT:  I looked at Rule 14, the second

 1    section, which anticipates and sort of invites an in-camera

 2    review, which I don't mind doing in any case, you know,

 3    there's really never that much stuff, once you get into it

 4    you can get through it.  I worry about having enough sort of

 5    traction and context on the case to really understand the

 6    significance of what I'm looking at.

 7              MS. AVERBACH:  I recently watched it.  I can

 8    paraphrase it for you.  He denies being a drug trafficker.

 9    He says that he's sort of the muscle or the enforcer because

10    his reputation on the street is so significant that he's,

11    you know, able to achieve results undeveloped, nondescript

12    results without, you know, doing much more than relying on

13    his reputation.

14              THE COURT:  Right.

15              MS. AVERBACH:  And he does know Donald McFarlan,

16    McFarlan rather, and that he knows him to bring drugs up

17    from New York City to Vermont.

18              THE COURT:  And then what was the last thing?

19              MS. AVERBACH:  The rest of it is just denials.

20              THE COURT:  Right.

21              MS. AVERBACH:  Never trafficked in humans, you

22    know.

23              THE COURT:  The part in which he, that he puts his

24    hand on Mr. McFarlan about is what exactly?

25              MS. AVERBACH:  He does, he does point the finger

1    at Mr. McFarlan as a drug courier, somebody who brings drugs

2    up from New York to Vermont.  And, frankly, in the

3    government's view, that's probably accurate.  We do believe

4    that's accurate.

5              THE COURT:  Right.  But probably not admissible.

6              MS. AVERBACH:  But that may be the only accurate

7    part of his post-arrest statement.

8              THE COURT:  Right.  And that could be excised for

9    Crawford reasons?

10             MS. AVERBACH:  It sure could.

11             THE COURT:  Okay.  That's helpful.  Thank you.

12             MS. AVERBACH:  Sure.  So, you know, as I looked at

13   it I thought the Rule 14 argument was stronger than the 8(b)

14   argument, but I'll take up the 8(b) argument because counsel

15   did a good job of arguing that point.  But as I read the

16   law, the case law joinder is proper when you have, one,

17   substantial identity of facts and participants or, two, a

18   common scheme or plan.  And in this case we have both.  We

19   have identity of facts and participants with respect to not

20   only the people who are charged and uncharged committing the

21   crimes and they are present for the crimes, but also of

22   victims and witnesses.

23             So to put that into concrete terms of victims of

24   the human trafficking counts are also the baggers in the

25   drug conspiracy.  The couriers in the drug conspiracy are

```
 1   also --
 2            THE COURT:  What I call the gophers.
 3            MS. AVERBACH:  The gophers?
 4            THE COURT:  Right.
 5            MS. AVERBACH:  Gopher is not the right word.
 6   Couriers means the people who transport drugs --
 7            THE COURT:  Right.
 8            MS. AVERBACH:  -- interstate.  It's a more
 9   important job --
10            THE COURT:  Okay.
11            MS. AVERBACH:  -- than the go to guy for McDonalds
12   or the runner even whose, who does the hand to hand.
13            THE COURT:  Okay.
14            MS. AVERBACH:  Okay.  So the government believes
15   that Mr. McFarlan is a courier and really the second in
16   charge of the drug conspiracy under Brian Folks.
17            And there were others involved who were uncharged.
18   And the conspiracy as charged in the indictment refers to
19   others named and unnamed.  Obviously, Mandy Latulippe was
20   also charged with being a part of the conspiracy.  But the
21   people who are charged, McFarlan, and uncharged in the
22   conspiracy, who were men, were also serviced sexually by the
23   victims of human trafficking.  That was part of the
24   expectation of Brian Folks.
25            And one of the ways that he was able to
```

1  continually demean, demoralize, degrade, dominate,

2  disorient, all the D. words that go into what coercion is in

3  this world, in this landscape.  Another very illustrative

4  example is there is an uncharged bagging up party.  A

5  bagging up party is when, you know, there's a substantial

6  amount of narcotics that needs to be packaged for individual

7  sale.

8          In this case Donald McFarlan was there, Brian

9  Folks was there, and a number of different women who were

10  part of the drug and human trafficking businesses.  And

11  those witnesses will be able to articulate what they were

12  doing there and why they were doing it and how they were

13  controlled into doing such a thing.

14          One of the things that Brian Folks insisted on is

15  that these women as they bagged up were naked and they only

16  wore aprons.  And that was because he wanted to make sure

17  they couldn't steal from him, his drugs.  But it was also

18  because every time he could degrade any one of these girls

19  he gained one more aspect of control over them, over their

20  behavior.

21          And so the drugs played a very coercive role

22  inasmuch as they were withheld from the girls in order to

23  force the commercial sex act, but in also various ways that

24  are far more subtle.

25          THE COURT:  So what do you say to Mr. Henry's

point, for which he has case law support, that in making the
Rule 8 decision, I don't do what you invited me to do, which
is kind of go listen to something like an opening statement
and draw my conclusions about what the evidence might well
be, but instead I decide that question within the limits of
the indictment itself and not sort of hear a forecast of
what the trial is going to look like?

          MS. AVERBACH:  Well, I do believe, and Mr. Henry
sets this out in his papers, that this is not a settled
question in the Second Circuit.  The case that he was
describing to you, Rajaratnam, is a Southern District case.
So it's not binding upon this Court.

          That Court drops a footnote in footnote two sets
out 11th Circuit, the Third Circuit, the D.C. Circuit all,
and perhaps others, all rely on representations by the
prosecutor, other moving papers that contain factual
assertions about the case and that that's proper.  So this
is an unsettled question in the Second Circuit.

          I would argue that it's in, it makes sense to do
it that way so that in the end of the day when you are
charged with making a decision as to whether evidence of one
is going to be evidence of the other, which is one of the
analyses this Court should undertake, you make an informed
decision about whether or not that's true.  Because
especially if you're in the Rule 14 landscape you have

1  tremendous discretion which won't be overturned by the Court

2  of Appeals unless there's been, you know, a gross

3  miscarriage of justice --

4          THE COURT:  Right.

5          MS. AVERBACH:  -- for example.

6          So, frankly, I think the more informed your

7  decision can be the better decision you make with respect to

8  these kinds of things.

9          Rule 8(b) requires that Your Honor determine

10  whether the commission of one offense depends on or lead to

11  the commission of the other.  And that's what we have here.

12  Brian Folks was selling drugs for years before the dates of

13  the drug conspiracy as charged in the indictment and up

14  until the point where he was arrested.  He also sold women

15  during all of those times and even prior to the dates

16  charged in the indictment with respect to the drug

17  conspiracy, but not before he was selling drugs.

18          So his ability to sell drugs, his ability to

19  engage in the conspiracy to sell drugs, enabled his ability

20  to traffic girls.  I mean, the drugs acted as how he enticed

21  them, how he lured them in.  We not only charged coercion we

22  charged fraud as a theory.

23          And one of the theories of fraud is that he

24  offered really vulnerable people the promise, the false

25  promise, of a good life, a safe life, clothes, food, shoes,

1   and shelter.  But those things came with strings that, you

2   know, became apparent over not very much time.  And as Folks

3   was able to, Folks and his co-conspirators were able to

4   further the addictions of their drug customers Folks was

5   able to exploit these really vulnerable people by

6   withholding the drugs and saying you can't have the

7   substance your body so desperately needs until you perform

8   this commercial sex act.  And then the drugs of the

9   conspiracy sold were also used as punishment for the

10  trafficked victims when they didn't do as they were told or

11  as a reward for when they did.

12          So it was really the currency of the human

13  trafficking crimes fueled by the drug conspiracy.  So the

14  customers of the drug conspiracy were all over, but also the

15  human trafficking victims.  So each one of the human

16  trafficking victims is going to be able to testify as to

17  what happened to her and how it happened.  And as she

18  testifies to that she will automatically give testimony

19  about the drug conspiracy.

20          And in order to sort of separate that testimony

21  out one from the other, the, I mean, it's almost impossible

22  because you wouldn't have any frame of reference.  You

23  wouldn't understand why she made the decisions she did and

24  why the facts, you know, unfolded as they did without

25  understanding that she was also a victim of sex trafficking

1  and vice versa.  You wouldn't understand the sex trafficking

2  if you didn't understand the drug conspiracy.  One really

3  depends on the other.

4          THE COURT:  You would try them separately, it

5  would just be two trials that lasted a pretty long time and

6  had a lot of overlapping evidence?

7          MS. AVERBACH:  Well, and that's the point.

8  Because it's the proof of the human trafficking, whether or

9  not Mr. McFarlan is charged with it, is admissible against

10  him because it's proof of the drug conspiracy.  So if Your

11  Honor were to sever the defendants, the co-defendants one

12  from the other, and we would end up with two trials, but the

13  evidence would be almost identical.  I mean, it would be to

14  no end because most of the human trafficking evidence is

15  admissible against Mr. McFarlan as proof of the conspiracy.

16          THE COURT:  Okay.  That's helpful.  Thank you.

17          MS. AVERBACH:  I would just highlight for Your

18  Honor --

19          THE COURT:  How do you see the Rule 14 issues?

20          MS. AVERBACH:  Pardon?

21          THE COURT:  How do you see the Rule 14 issues?

22          MS. AVERBACH:  Yeah.  I just wanted to highlight

23  one more thing, if that's okay.

24          THE COURT:  Yes, of course.

25          MS. AVERBACH:  The courts say over and over again

1    that there's a preference of joint trials of co-defendants

2    under 8(b).  And that's particularly strong where there is a

3    common scheme or plan alleged.  That's what we have here.

4    Really the standard is what a reasonable person would

5    recognize as a common factual element.  And given that human

6    trafficking is a relatively new crime under federal law, the

7    Trafficking and Victims Protection Act hasn't been around

8    for that long.  But I think there's enough discussion about

9    it now that courts, reasonable people can see a drug count

10   and human trafficking count side-by-side and infer that

11   there is reasonable overlap between those two things.

12          So the Rule 14 issue is an altogether separate

13   inquiry, as courts have said.  And that requires a

14   determination as to whether or not there is substantial

15   prejudice, not just prejudice, but substantial prejudice.

16   Because Rule 8(b) allows for some prejudice Rule 14 guards

17   against substantial prejudice.

18          And if there is, this Court has three options,

19   more than three really.  But first is to order separate

20   trials.  The second is to sever the defendants.  And the

21   third is to provide any other relief that justice requires.

22          So that, this kind of substantial prejudice only

23   exists when there's a serious risk that a joint trial will

24   compromise a specific trial right or prevent the jury from

25   making a reliable judgment regarding guilt or innocence.

1           As we've talked about with 8(b), the evidence is

2    admissible -- evidence that is admissible against one but

3    not the other does not necessarily require severance because

4    Your Honor can issue limiting instructions.  But in order to

5    guard against the spillover effect, which I think is sort of

6    the strongest concern here.

7           THE COURT:  Right.

8           MS. AVERBACH:  The one we ought to be most careful

9    about, limiting instructions throughout the trial, where the

10   Court instructs jurors to consider evidence only against

11   each defendant individually as to each count is proper.

12          And that happens in cases of this nature where one

13   person is charged in a conspiracy that's something like a

14   narcotics conspiracy or a gun conspiracy and other

15   defendants are charged with the murders, the violence, the

16   assaults.

17          The one particular case I'm thinking of out of the

18   Southern District murder, potentially torture and assault,

19   were sort of the other cases that they were worried about

20   this prejudicial emotional spillover about.

21          THE COURT:  Right.

22          MS. AVERBACH:  In that case they said if the proof

23   is admissible also as proof of the conspiracy the proper

24   recourse and an acceptable recourse is a limiting

25   instruction throughout because uncharged acts may be

 1   admissible as direct evidence of the conspiracy.  And that's

 2   what I was trying to articulate about 8(b), that even if

 3   Your Honor were to sever -- even if you found that the

 4   joinder was proper under 8(b) but severed under Rule 14, the

 5   effect would be not great because the so-called charged

 6   evidence of the sex trafficking would be admissible in a

 7   trial against Donald McFarlan for conspiracy.

 8           THE COURT:  Right.  Presumably those counts, the

 9   conduct relating to time before that started the conspiracy,

10   that would drop out?

11           MS. AVERBACH:  Yes.  Yes.

12           THE COURT:  But you would be offering the rest of

13   it anyway?

14           MS. AVERBACH:  There's either equal or more

15   overlap than not with respect to the timeframe.

16           THE COURT:  At least half, right?

17           MS. AVERBACH:  Yeah.  And so, you know, as the

18   human trafficking victims are all housed in one place, which

19   was also the stash house for the drugs.

20           THE COURT:  Right.

21           MS. AVERBACH:  So, you know, the description of

22   what was going on there, and who was there with respect to

23   Mr. McFarlan and Folks and who the players were and what the

24   rules were, all of those things will come out in a case

25   against McFarlan alone.  So, you know, severing under Rule

1   14 has no, has no effect really if that evidence is

2   otherwise admissible.

3          So the risk -- I would say also that the risk of

4   the emotional prejudice that we are concerned about with

5   respect to the sex trafficking, that is real.  I mean, the

6   nature of this evidence is disturbing.

7          And you can't disentangle it from the drugs

8   because really the drugs are part of, part of the way

9   everybody gets through this kind of disturbing traumatic

10  stuff by, you know, the anesthesia of the opiate.

11         But in this day and age of the Vermont opiate

12  epidemic I would submit that every single person who comes

13  into this courtroom as a prospective juror at this point,

14  unfortunately, is probably going to know somebody of a

15  family member, a cousin, a friend, a son, a daughter, an

16  aunt who has an addiction to opiates or has known somebody

17  who has overdosed from opiates.

18         And I don't think we can say any more that trying

19  a drug case of this magnitude with the fallout that it has

20  had when you see the witnesses up on the stand whose hair is

21  coming out, you know, that's, just that visual situation is

22  going to be extremely upsetting for people.  And that's just

23  the drug case.

24         So I, you know, there will be upsetting evidence

25  from the drug case as well as the human trafficking case.

1   So I don't think that you can, you can separate one from the

2   other and say one is more horrible than the other or more

3   upsetting.  But we do rely on jurors to follow instructions.

4   We do choose them hopefully with a lot of vetting with

5   respect to their ability to follow the law and follow Your

6   Honor's instructions.  And we do hope and expect that they

7   will do that.

8             As to the charge that the volume of evidence is

9   greater in the human trafficking case because it lasts

10  longer, I don't actually think that that's true.  There's a

11  tremendous amount of drug conspiracy evidence that comes

12  from a series of controlled buys which have video and audio

13  wires, and controlled -- well, confidential informants doing

14  transactions.  There's a lot of surveillance.  There's

15  actual drugs.  There's a firearm that's still uncharged in

16  the case.  There's a tremendous number of witnesses, law

17  enforcement and lay, who will testify as to the drug

18  conspiracy.  And there's digital evidence as well.  We did

19  search warrants on devices that were recovered from Folks

20  when he was arrested and his home.  And those devices gave

21  evidence of the drug conspiracy and the human trafficking

22  counts.

23            So as you go through Brian Folks' computer you can

24  see pictures of Donald McFarlan.  And those are interspersed

25  with folders of women and what he has collected as part of

1    his commercial sex scheme which are a variety of different

2    things, but some of them are live sex acts that Brian Folks

3    participated in and was able to get the girls to participate

4    in.  And sometimes Donald McFarlan is in those videos.

5    Sometimes it's just Brian Folks.

6            So you cannot -- separating the sex from the drugs

7    with respect to McFarlan would be almost an impossibility

8    with respect to the physical evidence as well because some

9    of the strongest evidence that we have digitally from Folks'

10   computer intermingles those two things.

11           Counsel also raised, but didn't touch on today,

12   the concern about speedy trial.  I think that that's

13   statutorily provided for where reasonable periods of delay

14   from joinder are excluded.

15           And, finally, the scope of the trials and judicial

16   economy, certainly the evidence is, the quantity of evidence

17   is less with respect to Mr. McFarlan than it is with respect

18   to Mr. Folks.  But the nature of the proof of the conspiracy

19   is time consuming.  And so trying Mr. McFarlan alone would

20   be a significant trial in and of itself and then trying

21   Brian Folks alone would be another significant trial.

22           I don't believe that any potential spillover

23   effect couldn't be cured with instructions from this Court.

24   I don't believe that it's the kind of prejudice, substantial

25   prejudice that requires forcing these witnesses to relive

1    these experiences twice publicly.  It's going to be hard

2    enough to get them to do it once.  For them, for their own

3    sakes I don't think this is a case that severance is

4    warranted.

5              THE COURT:  All right.  Thank you.  Mr. Henry?

6              MR. HENRY:  Yeah, I would just like to address a

7    couple points raised, Your Honor.  First, with the issue of

8    the Rule 8 analysis being settled law, I do agree that the

9    Second Circuit hasn't expressly adopted the notion that this

10   decision has to be made on the indictment alone.  But as we

11   point out in a footnote in our papers, there's a recent

12   unpublished Second Circuit opinion.  Rittweger didn't,

13   didn't decide the issue, but suggested that that was the

14   case.  And a more recent Second Circuit has suggested that

15   that is the Circuit's view anyway.  And I, and I believe

16   that, you know, that that's what the Second Circuit will

17   ultimately hold.

18             With respect to the genesis argument, you know, I

19   use the word genesis because the Eighth Circuit used it in a

20   case that I think is very similar and addresses a very

21   similar argument here which is, as I understand the

22   government's position, being that the drug distributions are

23   the genesis for the human trafficking.  And in an Eighth

24   Circuit case, Sazenski, that we cite in our papers, I just

25   want to read to the Court one passage from the case that I

1    think is right on point here.

2         There the Court says, the government argues that

3    there's a sufficient connection between a defendant's

4    offenses because the cocaine, the cocaine dealings, which

5    had occurred prior, provided the genesis of the marijuana

6    operation which came subsequently.  And because the same

7    informant was involved in both the cocaine and marijuana

8    transactions, we must disagree.  The former argument is

9    irrelevant.  It fails to address how McDonald was connected

10   to the cocaine dealing.

11        And that's the problem here, Your Honor, which is

12   to the extent that the human trafficking claims and the drug

13   distribution claims are somehow connected, they are so only

14   as it relates to Mr. Folks.  There is, there is no

15   allegation that Mr. McFarlan participated or that the

16   allegations of drug distributions against Mr. McFarlan are

17   somehow connected to the human trafficking because there's

18   no claim against Mr. McFarlan.

19        And I think, you know, ultimately that's the

20   problem with the government's theory here, is that even if

21   it were to be accepted that there's a connection, that

22   connection only relates to Mr. Folks whose the only one who

23   is alleged to have participated in the human trafficking.

24        So, and the other point I would like to make, Your

25   Honor, is, I mean, I disagree with the government that a lot

1    of the human trafficking evidence comes into a trial if Mr.

2    McFarlan is tried by himself as it relates to the drug

3    conspiracy.  There may be some overlap in that testimony to

4    the extent that these, that the victims of the human

5    trafficking were also workers and/or customers of the drug

6    conspiracy.  But I don't think the Court is going to permit

7    a lot of testimony about the horrors that they suffered at

8    the hands of Mr. Folks as it relates to being forced into

9    commercial sex acts if Mr. McFarlan is tried alone.  So I

10   would disagree that there's a lot of overlap.

11           So I think that under the Rule 14 analysis, you

12   know, I think that there's considerable risk of undue

13   prejudices here to Mr. McFarlan.  And, you know, I do agree

14   with the government in the characterization of this evidence

15   and would suggest that that would be extremely difficult for

16   a rational juror to segregate his or her mind based on a

17   curative jury instruction.

18           THE COURT:  All right.  Thank you both.  I'll take

19   it under advisement.  You've both given me things to think

20   about.  And I'll get something out by the end of the week.

21   Appreciate it.  Thanks.

22           MR. HENRY:  Thank you.

23           MS. AVERBACH:  Thank you, Your Honor.

24           (The Court recessed at 2:15 p.m.)

25

1              C E R T I F I C A T E

2

3          I, Anne Marie Henry, Official Court Reporter for

4    the United States District Court, for the District of

5    Vermont, do hereby certify that the foregoing pages are a

6    true and accurate transcription of my shorthand notes taken

7    in the aforementioned matter to the best of my skill and

8    ability.

9

10                 _____

11                    Anne Marie Henry, RPR
                       Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25